UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION NO. |
| | ) | |
| v. | ) | JUDGE: |
| | ) | |
| WASTE MANAGEMENT OF | ) | |
| WISCONSIN, INC.; ARCELORMITTAL | ) | |
| MORTGAGE ACCEPTANCE, INC.; | ) | |
| GENERAL ELECTRIC COMPANY; | ) | |
| PPG INDUSTRIES, INC.; ACME | ) | |
| GALVANIZING INC.; ALDRICH | ) | |
| CHEMICAL COMPANY, INC.; ALLIED | ) | |
| WASTE SYSTEMS, INC.; ARCHER | ) | |
| DANIELS MIDLAND COMPANY; | ) | |
| WISCONSIN BELL, INC.; AURORA | ) | |
| HEALTH CARE METRO, INC.; A.W. | ) | |
| HOLDING CORP.; BABCOCK & | ) | |
| WILCOX POWER GENERATION | ) | |
| GROUP, INC.; BOSTROM SEATING, | ) | |
| INC.; BRUNSWICK CORPORATION; | ) | |
| CATERPILLAR INC.; CNH AMERICA | ) | |
| LLC; CONAGRA GROCERY | ) | |
| PRODUCTS COMPANY, LLC; | ) | |
| CUDAHY TANNING COMPANY, INC.; | ) | |
| REXNORD INDUSTRIES, LLC; | ) | |
| GIDDINGS & LEWIS MACHINE | ) | |
| TOOLS, LLC; HARLEY-DAVIDSON | ) | |
| MOTOR COMPANY OPERATIONS, | ) | |
| INC.; HYDRITE CHEMICAL CO.; | ) | |
| MASTER LOCK COMPANY LLC; | ) | |
| MIDWEST TANNING COMPANY; | ) | |
| MRC HOLDINGS, INC.; NEWELL | ) | |
| RUBBERMAID, INC.; NORTHROP | ) | |
| GRUMMAN SYSTEMS CORPORATION; | ) | |
| OILGEAR COMPANY, INC.; P&H | ) | |
| MINING EQUIPMENT INC.; | ) | |
| ROCKWELL AUTOMATION, INC.; | ) | |

SIEMENS WATER TECHNOLOGIES     )
CORP.; STAR LINE TRUCKING CORP.,  )
TDY INDUSTRIES, INC.; BEAZER     )
EAST, INC.; NI INDUSTRIES, INC.;    )
VENTUREDYNE, LTD.; LEGACY )
VULCAN CORP., and  WISCONSIN     )
ELECTRIC POWER COMPANY,      )
                                        )
       Defendants.                   )

## COMPLAINT

The United States of America, by and through the undersigned attorneys, by the authority

of the Attorney General of the United States, and at the request of and on behalf of the United

States Environmental Protection Agency ("U.S. EPA"), alleges the following:

## STATEMENT OF THE CASE

1.       This is a civil action brought pursuant to Sections 106 and 107(a) of the

Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. §§ 9606

and 9607(a), as amended ("CERCLA"), relating to the Muskego Sanitary Landfill Superfund Site

("Site") located in or near Muskego, Wisconsin.  Pursuant to Section 106 of CERCLA, 42 U.S.C.

§ 9606, the United States seeks injunctive relief requiring Defendants to take action to abate

conditions that may pose an imminent and substantial endangerment to the public health or

welfare or the environment because of actual and threatened releases of hazardous substances

into the environment at or from the Site.  In addition, the United States seeks to recover

unreimbursed costs incurred by it for activities undertaken in response to the release or

threatened release of hazardous substances at and from the Site, pursuant to Section 107(a) of

CERCLA, 42 U.S.C. § 9607(a).  Finally, the United States seeks a declaratory judgment,

pursuant to Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), declaring that Defendants are liable for any future response costs that the United States may incur in connection with response actions that may be performed pertaining to the Site.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over the subject matter of this action pursuant to 42 U.S.C. § 9613(b), and 28 U.S.C. §§ 1331 and 1345.

3.      Venue is proper in this district pursuant to 42 U.S.C. § 9613(b) and 28 U.S.C. § 1391(b) and (c) because the claims arose and the threatened or actual releases of hazardous substances occurred in this district.

## DEFENDANTS

4.      Defendant Waste Management of Wisconsin Inc., formerly known as Acme Disposal Service Corporation, is a corporation that currently owns approximately 56 acres of property (the "Landfill Property") that contains former waste disposal facilities referred to herein as the Muskego Sanitary Landfill. From approximately 1954 until approximately 1980, various areas within the Muskego Sanitary Landfill were used for disposal of a large volume of municipal and industrial wastes, including industrial wastes containing hazardous substances. In addition to owning the Landfill Property, Waste Management of Wisconsin, Inc. has operated the Muskego Sanitary Landfill since approximately 1969 – including periods when wastes containing hazardous substances were disposed at the Muskego Sanitary Landfill. In addition, Waste Management of Wisconsin, Inc. and various of its corporate predecessors, including Best Disposal Service Company and United Waste Systems, accepted waste containing hazardous substances for transport for treatment or disposal, and in a number of instances Waste

3

Management of Wisconsin, Inc. or its predecessors selected the Muskego Sanitary Landfill for disposal of such wastes.

5. ArcelorMittal Mortgage Acceptance, Inc. is a corporation that succeeded to the liabilities of Inryco, Inc. Inryco, Inc. owned wastes containing hazardous substances, including paint wastes, paint thinners, and lacquer thinners, that contained one or more hazardous substances. By contract, agreement or otherwise, Inryco, Inc. arranged for treatment or disposal of such wastes, or arranged for transport of such wastes for treatment or disposal. Inryco, Inc. wastes containing hazardous substances were taken to the Muskego Sanitary Landfill for disposal. Hazardous substances of a type found in Inryco, Inc. wastes were found at the Site.

6. General Electric Company is a corporation that owned or possessed wastes, including acid wastes, that contained one or more hazardous substances. By contract, agreement or otherwise, General Electric Company arranged with Waste Management of Wisconsin, Inc. or its predecessors, including United Waste Systems and Best Disposal Service Company, for treatment or disposal of such wastes, or for transport of such wastes for treatment or disposal. General Electric Company wastes containing hazardous substances were taken to the Muskego Sanitary Landfill. Hazardous substances of a type found in General Electric Company wastes were found at the Site.

7. PPG Industries, Inc. is a corporation that owned or possessed wastes, including paint wastes, paint thinners and solvents, that contained one or more hazardous substances. By contract, agreement or otherwise, PPG Industries, Inc. arranged for treatment or disposal of such wastes, or arranged for transport of such wastes for treatment or disposal. PPG Industries, Inc.

4

wastes containing hazardous substances were taken to the Muskego Sanitary Landfill. Hazardous substances of a type found in PPG Industries, Inc. wastes were found at the Site.

8.      Acme Galvanizing Inc. is a corporation that owned or possessed wastes, including chromate wastes, that contained one or more hazardous substances. By contract, agreement or otherwise, Acme Galvanizing Inc. arranged for treatment or disposal of such wastes, or arranged with one or more entities, including Best Disposal Service Company, a predecessor of Waste Management of Wisconsin, for transport of such wastes for treatment or disposal. Acme Galvanizing Inc. wastes containing hazardous substances were taken to the Muskego Sanitary Landfill. Hazardous substances of a type found in Acme Galvanizing Inc. wastes were found at the Site.

9.      Aldrich Chemical Company, Inc. is a corporation that owned or possessed wastes, including flammable liquids and other chemical wastes, that contained one or more hazardous substances. By contract, agreement or otherwise, Aldrich Chemical Company, Inc. arranged for treatment or disposal of such wastes, or arranged for transport of such wastes for treatment or disposal. Aldrich Chemical Company, Inc. wastes containing hazardous substances were taken to the Muskego Sanitary Landfill. Hazardous substances of a type found in Aldrich Chemical Company, Inc. wastes were found at the Site.

10.      Allied Waste Systems, Inc., formerly known as Laidlaw Waste Systems, Inc., is a corporation that accepted wastes, including wastes containing hazardous substances, for transport for treatment or disposal. In a number of instances, Allied Waste Systems, Inc. selected the Muskego Sanitary Landfill for treatment or disposal of wastes that contained hazardous substances and transported such wastes to the Muskego Sanitary Landfill. Hazardous substances

5

of a type found in wastes that Allied Waste Systems, Inc. transported to the Muskego Sanitary Landfill were found at the Site.

11.     Archer Daniels Midland Company is a corporation that succeeded to the liabilities of Ambrosia Chocolate Company as a result of a series of acquisitions and transactions. Ambrosia Chocolate Company owned or possessed wastes, including solvents and degreasing tank residues, that contained hazardous substances. By contract, agreement or otherwise, Ambrosia Chocolate Company arranged for treatment or disposal of such wastes, or arranged for transport of such wastes for treatment or disposal. Ambrosia Chocolate Company wastes containing hazardous substances were taken to the Muskego Sanitary Landfill. Hazardous substances of a type found in Ambrosia Chocolate Company wastes were found at the Site.

12.     Wisconsin Bell, Inc., formerly known as Wisconsin Telephone Company, is a corporation that owned or possessed wastes, including creosote-coated materials, that contained one or more hazardous substances. By contract, agreement or otherwise, Wisconsin Telephone Company arranged for treatment or disposal of such wastes, or arranged for transport of such wastes for treatment or disposal. Wisconsin Telephone Company wastes containing hazardous substances were taken to the Muskego Sanitary Landfill. Hazardous substances of a type found in Wisconsin Telephone Company wastes were found at the Site.

13.     Aurora Health Care Metro, Inc. is a corporation that at various times was formerly known as St. Luke's Medical Center, Inc., St. Luke's Hospital, Inc., and St. Luke's Hospital Association, Inc.   St. Luke's Hospital Association, Inc. owned or possessed wastes, including medical wastes from St. Luke's Hospital, that contained hazardous substances. By contract, agreement or otherwise, St. Luke's Hospital Association, Inc. arranged for treatment or disposal

6

of such wastes, or arranged for transport of such wastes for treatment or disposal. Wastes containing hazardous substances from St. Luke's Hospital were taken to the Muskego Sanitary Landfill. Hazardous substances of a type found in St. Luke's Hospital waste were found at the Site. As a result of various acquisitions and transactions, including acquisition of Trinity Memorial Hospital by St. Luke's Medical Center, Inc., Aurora Health Care Metro, Inc. also succeeded to liabilities arising from arrangements for treatment of disposal of Trinity Memorial Hospital wastes containing hazardous substances or arrangements for transport of such Trinity Memorial Hospital wastes for treatment or disposal. Wastes containing hazardous substances from Trinity Memorial Hospital were taken to the Muskego Sanitary Landfill. Hazardous substances of a type found in Trinty Memorial Hospital waste were found at the Site.

14.    A.W. Holding Corp. is a corporation that succeeded to the liabilities of Amron Corporation. Amron Corporation owned or possessed wastes, including nitric acid, phosphoric acid, zinc stripper, waste oils, spent chemicals and other liquid wastes, that contained one or more hazardous substances. By contract, agreement or otherwise, Amron Corporation arranged for treatment or disposal of such wastes, or arranged for transport of such wastes for treatment or disposal. Amron Corporation wastes containing hazardous substances were taken to the Muskego Sanitary Landfill. Hazardous substances of a type found in Amron Corporation wastes were found at the Site.

15.    Babcock & Wilcox Power Generation Group, Inc., formerly known as Babcock & Wilcox Company, is a corporation that owned or possessed wastes, including waste cutting oils and other liquid industrial wastes, that contained one or more hazardous substances. By contract, agreement or otherwise, Babcock & Wilcox Company arranged for treatment or disposal of such

7

wastes, or arranged for transport of such wastes for treatment or disposal. Babcock & Wilcox Company wastes containing hazardous substances were taken to the Muskego Sanitary Landfill. Hazardous substances of a type found in Babcock & Wilcox Company wastes were found at the Site.

16. Bostrom Seating, Inc., formerly known as Bostrom Acquisition Corp., is a corporation that acquired assets and succeeded to liabilities of UOP, Inc. in February, 1985. In or about 1967, UOP, Inc. acquired assets and succeeded to the liabilities of Bostrom Corporation. At relevant times, Bostrom Corporation and UOP, Inc. each owned or possessed liquid industrial wastes that contained one or more hazardous substances, including wastes from a Cudahy, Wisconsin plant where Bostrom Corporation and UOP, Inc. manufactured seats and seating accessories. At relevant times, Bostrom Corporation and UOP, Inc. each arranged, by contract, agreement or otherwise, for treatment or disposal of such wastes, or arranged for transport of such wastes for treatment or disposal. Hazardous substances of a type found in Bostrom Corporation and UOP, Inc. wastes were found at the Site.

17. Brunswick Corporation is a corporation that succeeded to the liabilities of Ozite Corporation. Ozite Corporation owned or possessed waste materials, including sludges, that contained hazardous substances. By contract, agreement or otherwise, Ozite Corporation arranged for treatment or disposal of such wastes, or arranged for transport of such wastes for treatment or disposal. Ozite Corporation wastes containing hazardous substances were taken to the Muskego Sanitary Landfill. Hazardous substances of a type found in Ozite Corporation wastes were found at the Site.

8

18.     Caterpillar Inc. is a corporation that owned or possessed waste materials, including paint strippers, corrosive liquids and slag wastes, that contained one or more hazardous substances.  By contract, agreement or otherwise, Caterpillar Inc. arranged for treatment or disposal of such wastes, or arranged for transport of such wastes for treatment or disposal.  Caterpillar Inc. wastes containing hazardous substances were taken to the Muskego Sanitary Landfill.  Hazardous substances of a type found in Caterpillar Inc. wastes were found at the Site.

19.     CNH America LLC is a limited liability company formerly known as Case Corporation.  Case Corporation acquired the assets and succeeded to liabilities of  J.I. Case Company.  J.I. Case Company owned or possessed wastes, including drums of paint wastes and waste oils, that contained hazardous substances.  By contract, agreement or otherwise, J.I. Case Company arranged for treatment or disposal of such wastes, or arranged for tranport of such wastes for treatment or disposal.  J.I. Case Company wastes containing hazardous substances were taken to the Muskego Sanitary Landfill.  Hazardous substances of a type found in J.I. Case Company wastes were found at the Site.

20.     ConAgra Grocery Products Company, LLC is a limited liability company that succeeded to the liabilities of Pfister and Vogel Tanning Co.  Pfister and Vogel Tanning Co. owned or possessed wastes, including tannery sludges and flammable solvents, that contained one or more hazardous substances.  By contract, agreement or otherwise, Pfister and Vogel Tanning Co. arranged for treatment or disposal of such wastes, or arranged for transport of such wastes for treatment or disposal.  Pfister and Vogel Tanning Co. wastes containing hazardous substances were taken to the Muskego Sanitary Landfill.  Hazardous substances of a type found in Pfister and Vogel Tanning Co. wastes were found at the Site.

9

21.     Cudahy Tanning Company, Inc. is a corporation that owned or possessed wastes, including leather scraps, sludges and other tannery wastes containing chromium, a hazardous substance.   By contract, agreement or otherwise, Cudahy Tanning Company, Inc. arranged for treatment or disposal of such wastes, or arranged for transport of such wastes for treatment or disposal.  Cudahy Tanning Company, Inc.  wastes containing hazardous substances were taken to the Muskego Sanitary Landfill.  Hazardous substances of a type found in Cudahy Tanning Company, Inc. wastes were found at the Site.

22.     Rexnord Industries, LLC is a limited liability company that succeeded to the liabilities of The Falk Corporation.  The Falk Corporation owned or possessed wastes, including drums containing waste paint thinner, waste lacquer, and waste oils, that contained one or more hazardous substances.  By contract, agreement or otherwise, The Falk Corporation arranged for treatment or disposal of such wastes, or arranged for transport of such wastes for treatment or disposal.  The Falk Corporation wastes containing hazardous substances were taken to the Muskego Sanitary Landfill.  Hazardous substances of a type found in The Falk Corporation wastes were found at the Site.

23.     Giddings & Lewis Machine Tools, LLC is a limited liability company that succeeded to the liabilities of Kearney & Trecker Corporation.  Kearney & Trecker Corporation owned or possessed wastes, including waste sludges, machine oils and cutting oils that contained one or more hazardous substances.  By contract, agreement or otherwise, Kearney & Trecker Corporation arranged for treatment or disposal of such wastes, or arranged for transport of such wastes for treatment or disposal.  Kearney & Trecker Corporation wastes containing hazardous

10

substances were taken to the Muskego Sanitary Landfill. Hazardous substances of a type found in Kearney & Trecker Corporation wastes were found at the Site.

24.     Harley-Davidson Motor Company Operations, Inc. is a corporation that owned or possessed wastes, including waste oils, that contained one or more hazardous substances. By contract, agreement or otherwise, Harley-Davidson Motor Operations, Inc. arranged for treatment or disposal of such wastes, or arranged for transport of such wastes for treatment or disposal. Harley-Davidson Motor Operations, Inc. wastes containing hazardous substances were taken to the Muskego Sanitary Landfill. Hazardous substances of a type found in Harley-Davidson Motor Operations, Inc. wastes were found at the Site.

25.     Hydrite Chemical Co. is a corporation that owned or possessed waste materials, including sodium carbonate wastes, sodium chloride wastes, sodium metasilicate wastes, phosphate wastes, and various powdered wastes, that contained one or more hazardous substances. By contract, agreement or otherwise, Hydrite Chemical Co. arranged for treatment or disposal of such wastes, or arranged for transport of such wastes for treatment or disposal. Hydrite Chemical Co. wastes containing hazardous substances were taken to the Muskego Sanitary Landfill. Hazardous substances of a type found in Hydrite Chemical Co. wastes were found at the Site.

26.     Master Lock Company LLC is a limited liability company formerly known at various times as Master Lock Company, and Master Lock Company, Inc. Master Lock Company and/or Master Lock Company, Inc. owned wastes, including waste oils and other liquid industrial wastes, that contained one or more hazardous substances. By contract, agreement or otherwise, Master Lock Company and/or Master Lock Company, Inc. arranged for treatment or disposal of

11

such wastes, or arranged for transport of such wastes for treatment or disposal. Master Lock Company and/or Master Lock Company, Inc. wastes containing hazardous substances were taken to the Muskego Sanitary Landfill. Hazardous substances of a type found in Master Lock Company and/or Master Lock Company wastes were found at the Site.

27. Midwest Tanning Company is a corporation that owned or possessed wastes, including liquid tannery wastes, dyes and sludges, that contained one or more hazardous substances. By contract, agreement or otherwise, Midwest Tanning Company arranged for treatment or disposal of such wastes, or arranged for transport of such wastes for treatment or disposal. Midwest Tanning Company wastes containing hazardous substances were taken to the Muskego Sanitary Landfill. Hazardous substances of a type found in Midwest Tanning Company wastes were found at the Site.

28. MRC Holdings, Inc. is a corporation that succeeded to the liability of American Can Co. American Can Company, through its Americology Division, owned or possessed liquid industrial wastes that contained one or more hazardous substances. By contract, agreement or otherwise, American Can Co. each arranged for treatment or disposal of wastes containing hazardous substances, or arranged for transport of such wastes for treatment or disposal. American Can Co. wastes containing hazardous substances were taken to the Muskego Sanitary Landfill. Hazardous substances of a type found in American Can Co. wastes were found at the Site.

29. Newell Rubbermaid, Inc. is a corporation that succeeded to the liabilities of EZ Paintr Corporation. EZ Paintr Corporation owned or possessed wastes, including waste acetone, waste alcohols, waste oils, polyvinyl acetate and waste polyvinyl alcohol, that contained one or

12

more hazardous substances. By contract, agreement or otherwise, EZ Paintr Corporation arranged for treatment or disposal of such wastes, or arranged for transport of such wastes for treatment or disposal. EZ Paintr Corporation wastes containing hazardous substances were taken to the Muskego Sanitary Landfill. Hazardous substances of a type found in EZ Paintr Corporation wastes were found at the Site.

30.     Northrop Grumman Systems Corporation is a corporation that succeeded to the liabilities of Litton Industries, Inc., which in turn succeeded to the liabilities of Litton Industrial Products, Inc, a Delaware corporation that was formerly known as Louis Allis Company ("Louis Allis-Delaware"). In or around February of 1967, Louis Allis-Delaware acquired the assets and succeeded to the liabilities of a Wisconsin corporation known as Louis Allis Company ("Louis Allis-Wisconsin"). Louis Allis-Wisconsin and Louis Allis-Delaware each owned or possessed hazardous substances, including waste paints, waste thinners and waste oils, that contained one or more hazardous substances. Louis Allis-Wisconsin and Louis Allis-Delaware each arranged, by contract, agreement or otherwise, for treatment or disposal of such wastes, or arranged for transport of such wastes for treatment or disposal. Louis Allis-Wisconsin and Louis Allis-Delaware wastes containing hazardous substances were taken to the Muskego Sanitary Landfill. Hazardous substances of a type found in Louis Allis-Wisconsin and Louis Allis-Delaware wastes were found at the Site.

31.     Oilgear Company, Inc. is a corporation that owned or possessed drums of liquid industrial wastes containing hazardous substances, including wastes from a Milwaukee, Wisconsin plant where it manufactured hydraulic components and systems. By contract, agreement or otherwise, Oilgear Company, Inc. arranged for treatment or disposal of such

13

wastes, or arranged for transport of such wastes for treatment or disposal. Oilgear Company, Inc. wastes containing hazardous substances were taken to the Muskego Sanitary Landfill. Hazardous substances of a type found in Oilgear Company Inc. wastes were found at the Site.

32.     P&H Mining Equipment Inc., formerly known as Harnischfeger Industries, Inc., owned or possessed wastes from its heavy equipment manufacturing plants in Milwaukee, Wisconsin, including waste machine oils, paint wastes and residues, oil drip pads, and slag, that contained one or more hazardous substances. By contract, agreement or otherwise, Harnischfeger Industries, Inc., arranged for treatment or disposal of such wastes, or arranged for transport of such wastes for treatment or disposal. Harnischfeger Industries, Inc., wastes containing hazardous substances were taken to the Muskego Sanitary Landfill. Hazardous substances of a type found in Harnischfeger Industries, Inc., wastes were found at the Site.

33.     Rockwell Automation, Inc. is a corporation that, through a series of transactions, succeeded to the liabilities of Allen-Bradley Company. Allen-Bradley Company owned or possessed wastes from manufacturing operations at its Milwaukee, Wisconsin plant, including grinding compounds, slag, and other wastes, that contained one or more hazardous substances. By contract, agreement or otherwise, Allen-Bradley Company arranged for treatment or disposal of such wastes, or arranged with various other persons or entities, including Waste Management of Wisconsin, Inc. and its predecessor, United Waste Systems, for transport of such wastes for treatment or disposal. Allen-Bradley Company wastes containing hazardous substances were taken to the Muskego Sanitary Landfill. Hazardous substances of a type found in Allen-Bradley Company wastes were found at the Site.

14

34.     Siemens Water Technologies Corp. is a corporation that succeeded to the liabilities of Envirex, Inc.  Envirex, Inc. owned or possessed wastes from its wastewater treatment equipment manufacturing plant in Waukesha, Wisconsin, including paint wastes and other liquid wastes that contained one or more hazardous substances.  By contract, agreement or otherwise, Envirex, Inc. arranged for treatment or disposal of such wastes, or arranged for transport of such wastes for treatment or disposal.  Envirex, Inc. wastes containing hazardous substances were taken to the Muskego Sanitary Landill.  Hazardous substances found in Envirex, Inc. wastes were found at the Site.

35.     Star Line Trucking Corp. is a corporation that accepted wastes for transport for treatment or disposal, including fly ash waste that contained one or more hazardous substances. Star Truck Company selected the Muskego Sanitary Landfill for treatment or disposal of wastes that it accepted for transport, including fly ash waste that contained hazardous substances, and Star Line Trucking Company transported such wastes to the Muskego Sanitary Landfill. Hazardous substances of a type found in wastes that Star Line Trucking Company transported to the Muskego Sanitary Landfill were found at the Site.

36.     TDY Industries, Inc., formerly known as Teledyne Industries, Inc., through its Teledyne Wisconsin Motor division, owned or possessed wastes from motor and engine manufacturing operations at one or more plants in and around Milwaukee, Wisconsin, including waste oils and other industrial liquid wastes that contained one or more hazardous substances. By contract, agreement or otherwise, Teledyne Industries Inc., through its Teledyne Wisconsin Motor division, arranged for treatment or disposal of such wastes, or arranged for transport of such wastes for treatment or disposal.   Wastes containing hazardous substances from Teledyne

15

Industries Inc.'s Teledyne Wisconsin Motor division were taken to the Muskego Sanitary Landfill. Hazardous substances of a type found in wastes from Teledyne Industries Inc.'s Teledyne Wisconsin Motor division were found at the Site.

37. Beazer East, Inc., formerly known at various times as Beazer Materials and Supplies Inc. and as Koppers Company. Inc. is a corporation that succeeded to the liabilities of Thiem Corp. Thiem Corp. owned or possessed wastes from the manufacture of adhesives, sealants and other chemicals at its plants in West Allis and Oak Creek, Wisconsin, including waste glue, waste chemicals, and waste powders, that contained one or more hazardous substances. By contract, agreement or otherwise, Thiem Corp. arranged for treatment or disposal of such wastes, or arranged for transport of such wastes for treatment or disposal. Thiem Corp. wastes containing hazardous substances were taken to the Muskego Sanitary Landfill. Hazardous substances of a type found in Thiem Corp. wastes were found at the Site.

38. NI Industries, Inc., formerly known as Norris Industries, Inc., is a corporation that succeeded to the liabilities of its former subsidiaries, Pressed Steel Tank Company ("PST") and Industrial Cylinders Company. At various times between December 1, 1966 and December 1, 1975, PST owned or possessed wastes from manufacturing operations at its West Allis, Wisconsin plant, including heavy industrial sludges, that contained one or more hazardous substances. At various times between December 1, 1966 and December 1, 1975, PST, by contract, agreement or otherwise, arranged for treatment or disposal of such wastes, or arranged for transport of such wastes for treatment or disposal. PST wastes containing hazardous substances were taken to the Muskego Sanitary Landfill. Hazardous substances of a type found in PST wastes were found at the Site. At various times between December 25, 1966 and January,

16

1980, Industrial Cylinders Company owned or possessed wastes from manufacturing operations at its West Milwaukee, Wisconsin plant, including heavy industrial sludges, that contained one or more hazardous substances. At various times between December 25, 1966 and January, 1980, Industrial Cylinders Company by contract, agreement or otherwise, arranged for treatment or disposal of such wastes, or arranged for transport of such wastes for treatment or disposal. Industrial Cylinders Company wastes containing hazardous substances were taken to the Muskego Sanitary Landfill. Hazardous substances of a type found in Industrial Cylinders Company wastes were found at the Site.

39. Venturedyne, Ltd. is a corporation that succeeded to the liabilities of Wehr Corporation, formerly known as Wehr Steel Company, which at various times used the name Dings Company, Magnetic Group for certain business operations. Wehr Steel Company owned or possessed wastes from the manufacture of industrial magnetic products at its Milwaukee, Wisconsin plant, including waste cutting oils, that contained one or more hazardous substances. By contract, agreement or otherwise, Wehr Steel Company, Inc., through the Dings Company, Magnetic Group arranged for treatment or disposal of such wastes, or arranged for transport of such wastes for treatment or disposal. Wastes containing hazardous substances from Wehr Steel Company's Dings Company, Magnetic Group were taken to the Muskego Sanitary Landfill. Hazardous substances of a type found in wastes from Wehr Steel Company's Dings Company, Magnetic Group wastes were found at the Site.

40. Legacy Vulcan, Corp., formerly known as Vulcan Materials Company, is a corporation that owned or possessed wastes, including aluminum slag and other waste byproducts, that contained one or more hazardous substances. By contract, agreement or

17

otherwise, Vulcan Materials Company arranged for treatment or disposal of such wastes, or arranged for transport of such wastes for treatment or disposal.  Vulcan Materials Company wastes containing hazardous substances were taken to the Muskego Sanitary Landfill. Hazardous substances of a type found in Vulcan Materials Company wastes were found at the Site.

41.     Wisconsin Electric Power Company is a corporation that owned or possessed wastes, including oil-containing transformers and flyash, that contained one or more hazardous substances.   By contract, agreement or otherwise, Wisconsin Electric Power Company arranged for treatment or disposal of such wastes, or arranged for transport of such wastes for treatment or disposal.  Wisconsin Electric Power Company wastes containing hazardous substances were taken to the Muskego Sanitary Landfill.  Hazardous substances of a type found in Wisconsin Electric Power Company wastes were found at the Site.

42.     Each of the Defendants is a "person" as defined by Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

## GENERAL ALLEGATIONS

43.     The Site includes a former waste disposal facility known as the Muskego Sanitary Landfill and additional areas where hazardous substances from the Muskego Sanitary Landfill have migrated.

44.     The Muskego Sanitary Landfill is situated north of State Highway 24 and east of Crowbar Road, in the City of Muskego Wisconsin and includes three separate waste disposal areas, known as the "Old Fill Area," the "Southeast Fill Area," and the "Non-Contiguous Fill Area," that occupy approximately 56 areas.

18

45.     From approximately 1954 to 1980, an estimated 4.4 million cubic feet of waste was disposed at the Muskego Sanitary Landfill.  In addition to municipal refuse, the Muskego Sanitary Landfill received industrial waste from numerous sources, including waste paints, paint thinners, and lacquers, plating wastes, tannery wastes, waste inks, and drummed material containing hazardous substances, including but not limited to, polychlorinated biphenyls, benzene, toluene, chloroform, trichloroethene, ethyl benzene, methylene chloride, tetrachloroethene, 1,2-dichloroethane and 1,1-dichloroethene.

46.     In or around 1985, the Site was placed on the National Priorities List codified at 40 C.F.R. Part 300, Appendix B.

47.     In response to the release or substantial threat of release of hazardous substances at or from the Site, Waste Management of Wisconsin, Inc. ("WMWI") performed a Remedial Investigation and Feasibility Study ("RI/FS") for the Site pursuant to 40 C.F.R. § 300.430 and an Administrative Order on Consent issued by U.S. EPA on or about August 14, 1987.

48.     During the Remedial Investigation ("RI"), numerous hazardous substances were detected in soil, sediment, leachate and groundwater at and near the Muskego Sanitary Landfill, including:   benzene, ethylbenzene, toluene, xylene, tetrachloroethene, chloroethane, 1,2-dichoroethene 1,1-dichloroethane, 1,2-dichloroethane, styrene, 1,2-dichloropropane, trichloroethene, vinyl chloride, acetone, 2-butanone, 2-hexanone, bis(2-ethylhexyl)phthalate, tetrahydrofuran, 1,4-dichlorobenzene, 2-methylphenol, chloroethane, napthalene, 4-methyl-2-pentanone, isophorone, chloroform, 2-methylnaphthalene, phenanthrene, pyrene, chrysene, benzo(a)pyrene, indeno(1,2,3-cd) pyrene, dibenzo(a,h) anthracene, benzo(g,h,i) perylene, 2-methylnaphthalene, pyrene, dichloroflouromethane, 4-methylphenol,

19

pentachlorophenol, phenol, benzoic acid, 2,4-dimethylpenol, mercury, butylbenzyl phthalate,

diethylphthalate, di-n-octylphthalate, di-n-butyl phthalate, polychlorinated biphenyls, thallium,

arsenic, cadmium, chromium, cobalt, copper, cyanide, lead, magnesium, nickel, selenium, silver,

sodium, and zinc. Groundwater samples collected as part of the Remedial Investigation contained

concentrations of thallium, cadmium, pentachlorophenol, vinyl chloride, 1,2-dichloroethane,

trichloroethene, benzene, and 1,2-dichloropropane that exceed Maximum Contaminant Levels

established for those substances pursuant to the Safe Drinking Water Act, 42 U.S.C. § 300f *et

seq*.

49.     A risk assessment conducted as part of the RI indicated that the Site posed a risk

to human health through contact with an ingestion of soils, and through potential consumption of

groundwater.

50.     On or about June 12, 1992, U.S. EPA issued a record of decision ("ROD")

selecting a "Source Control Operable Unit" ("SCOU") remedy for the Site.  The objectives of the

SCOU remedy included reducing potential exposure to waste and contaminated soils at the

Muskego Sanitary Landfill, reducing potential migration of contaminants from waste and

contaminated soils to groundwater, controlling migration of landfill gas, and minimizing

emission of hazardous air contaminants from disposal areas.  The main components of the SCOU

remedy included:  design and installation of a two-foot thick clay cap over waste disposal areas at

the Site, design and installation of an in-situ vapor extraction system in the Non-Contiguous Fill

Area, expansion of leachate collection and landfill gas extraction systems to cover the entire

landfill, installing additional monitoring wells and implementing a groundwater

20

monitoring program, establishing deed restrictions and other controls to limit access to the

Landfill and restrict activities that could interfere with the effectiveness of the SCOU remedy.

51.     On or about December 9, 1992, U.S. EPA issued an administrative order to

numerous persons, including many of the Defendants in this action, pursuant to Section 106 of

CERCLA, 42 U.S.C. § 9606.  In that administrative order, U.S. EPA determined that conditions

at the Site may present an imminent and substantial endangerment to human health or the

environment, and U.S. EPA directed recipients of that order to implement the remedy selected in

the SCOU ROD.

52.     Parties who received the administrative order referred to in the preceding

paragraph implemented components of the SCOU remedy and reimbursed various response costs

incurred by U.S. EPA in connection with the Site, including costs incurred in connection with

implementation of the SCOU remedy.

53.     On or about February 2, 1995, U.S. EPA issued a ROD selecting a "Groundwater

Operable Unit" ("GWOU") remedy for the Site.  The objective of the GWOU remedy was

capture and treat contaminated groundwater in order to prevent potential exposure to

groundwater contamination exceeding specified cleanup standards outside the waste disposal

areas.  The main components of GWOU remedy included:  groundwater pumping tests,

installation and operation of a groundwater extraction system in the vicinity of the Non-

Contiguous Fill Area, and continued groundwater monitoring to assure attainment of specified

groundwater cleanup standards at the boundaries of waste disposal areas.

54.     On or about June 6, 1995, U.S. EPA issued an administrative order to numerous

persons, including many of the Defendants in this action, pursuant to Section 106 of CERCLA,

42 U.S.C. § 9606.  In that administrative order, U.S. EPA determined that conditions at the Site may present an imminent and substantial endangerment to human health or the environment, and U.S. EPA directed recipients of that order to implement the remedy selected in the GWOU ROD.

55.     Parties who received the administrative order referred to in the preceding paragraph implemented components of the GWOU remedy, and the same parties reimbursed various response costs incurred by U.S. EPA through December 12, 1995  in connection with the Site, including costs incurred in connection with implementation of the GWOU remedy.

56.     Beginning in 1997, hazardous substances, including vinyl chloride, were detected at various groundwater monitoring locations, including residential wells, downgradient from the Muskego Sanitary Landfill, in concentrations exceeding cleanup standards established as part of the GWOU remedy.  Such groundwater contamination is located outside areas addressed by the groundwater extraction and treatment system installed as part of the GWOU remedy.

57.     U.S. EPA has determined that remedial measures in addition to measures previously implemented for the Site are necessary in order to assure that the remedy for the Site is protective of human health and the environment.  On September 13, 2010, U.S. EPA issued an Explanation of Significant Differences ("ESD"), supplementing the prior GWOU remedy, as provided for in the GWOU ROD.  The ESD provides for: an evaluation of the appropriateness of utilizing monitored natural attenuation ("MNA") to achieve cleanup standards beyond the Landfill boundary; implementation of contingent measures if U.S. EPA determines that MNA is not appropriate; implementation of additional institutional controls at the Landfill and in the areas beyond the Landfill boundary to prevent unacceptable exposures to Site-related contamination; implementation of a wellhead protection program for municipal drinking water

22

wells near the Site; and evaluation and improvement of the existing remedy components. These measures are intended to assure that the Site remedy meets its objectives, including remediation of all hazardous substances that may present an imminent and substantial endangerment to human health or the environment.

58.     The Muskego Sanitary Landfill is a "facility" within the meaning and scope of Sections 101(9) and 107(a) of CERCLA, 42 U.S.C. §§ 9601(9) and 9607(a). The entire Site is also a "facility" within the meaning and scope of Sections 101(9) and 107(a) of CERCLA, 42 U.S.C. §§ 9601(9) and 9607(a).

59.     At times relevant to this action, there have been "releases" or threats of "releases," within the meaning of Sections 101(22) and 107(a) of CERCLA, 42 U.S.C. §§ 9601(22) and 9607(a), of hazardous substances into the environment at and from the Site, including the Muskego Sanitary Landfill.

60.     Hazardous substances, within the meaning of Section 101(14) of CERCLA, 42 U.S.C. § 9601(14), have been disposed of at the Site, including the Muskego Sanitary Landfill.

61.     The United States has taken response actions, within the meaning of Section 101(25), 42 U.S.C. § 9601(25), in connection with the Site, including but not limited to providing oversight in the field and managing contractor personnel. The response actions taken by the United States are not inconsistent with the National Contingency Plan, 40 C.F.R. Part 300. The United States will continue to take response actions in connection with the Site.

# FIRST CLAIM FOR RELIEF
## (Response Costs)

62.     The allegations contained in Paragraphs 1-61 are realleged and incorporated by reference herein.

63.     Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), provides in pertinent part:

Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section-

>     *     *     *     *

(1)     the owner and operator of a vessel or a facility,

(2)     any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,

(3)     any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances, and

(4)     any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities . . . or sites selected by such person, . . .

from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance, shall be liable for--

(A) all costs of removal or remedial action incurred by the United States Government . . . not inconsistent with the national contingency plan . . . .

64.     The actions taken by the United States in connection with the Site constitute "response" actions within the meaning of Section 101(25) of CERCLA, 42 U.S.C. § 9601(25), and the United States has incurred response costs in connection with such response actions.

24

65.     Since some time in or before 2009, Waste Management of Wisconsin Inc. has owned the Landfill Property within the Site.  As the current owner and operator of the Landfill Property, Waste Management of Wisconsin Inc. is within the class of liable parties described in Section 107(a)(1) of CERCLA, 42 U.S.C. §§ 9607(a)(1).

66.     From approximately 1969 until 1980, Waste Management of Wisconsin, Inc. operated waste disposal facilities at the Landfill Property.  As a person who operated the Landfill Property at a time when hazardous substances were disposed there, Waste Management of Wisconsin, Inc. is within the class of liable parties described in Section 107(a)(2) of CERCLA, 42 U.S.C. § 9607(a)(2).

67.     ArcelorMittal Mortgage Acceptance, Inc.; General Electric Company; PPG Industries, Inc.; Acme Galvanizing Inc.; Aldrich Chemical Company, Inc.; Archer Daniels Midland Company; Wisconsin Bell, Inc.; Aurora Health Care Metro, Inc.; A.W. Holding Corp., Babcox & Wilcox Power Generation Group, Inc.; Bostrom Seating Inc.; Brunswick Corporation; Caterpillar Inc.; CNH America LLC; ConAgra Grocery Products Company, LLC; Cudahy Tanning Company, Inc.; Rexnord Industries, LLC; Giddings & Lewis Machine Tools, LLC; Harley-Davidson Motor Company Operations, Inc.; Hydrite Chemical Co.; Master Lock Company LLC; Midwest Tanning Company; MRC Holdings, Inc.; Newell Rubbermaid, Inc.; Northrop Grumman Systems Corporation; Oilgear Company, Inc.; P&H Mining Equipment Inc.; Rockwell Automation, Inc.; Siemens Water Technologies Corp.; TDY Industries, Inc.; Beazer East, Inc.; NI Industries, Inc.; Venturedyne, Ltd.; Legacy Vulcan Corp.;  and Wisconsin Electric Power Company are all persons, or successors of persons, who are within the class of liable parties described in Section 107(a)(3) of CERCLA, 42 U.S.C. § 9607(a)(3), because each of these

25

persons, or their predecessors, owned or possessed hazardous substances and either arranged for treatment or disposal of such hazardous substances at the Site, or arranged with another person to transport for treatment or disposal such hazardous substances, which were taken to the Site for treatment or disposal.

68.     Waste Management of Wisconsin, Inc., Allied Waste Systems, Inc. and Star Line Trucking Corp. are all persons, or successors of persons, who are within the class of liable parties described in Section 107(a)(4) of CERCLA, 42 U.S.C. § 9607(a)(4), because each of these parties accepted hazardous substances for transport for disposal or treatment, and on various occasions selected the Site for disposal of such waste materials.

69.     As a result of releases or threatened releases of hazardous substances at or from the Site, the United States has incurred costs of remedial or removal action not inconsistent with the National Contingency Plan, which was promulgated under Section 105(a) of CERCLA, 42 U.S.C. § 9605(a), and codified at 40 C.F.R. Part 300.

70.     In connection with response actions referred to in the preceding paragraph, the United States has incurred response costs in excess of $1,383,095.53, which have not been reimbursed.  The United States will continue to incur response costs in connection with the Site.

71.     Defendants are jointly and severally liable to the United States for all response costs incurred and to be incurred by the United States in connection with the Site, including enforcement costs and prejudgment interest on such costs, pursuant to Sections 107(a)(1), (2), (3), and (4) of CERCLA, 42 U.S.C. §§ 9607(a)(1), (2), (3) and (4).

26

## SECOND CLAIM FOR RELIEF
### (Declaratory Judgment Under CERCLA Section 113(g)(2))

72.     The allegations contained in Paragraphs 1-71 are realleged and incorporated by reference herein.

73.     CERCLA Subsection 113(g)(2), 42 U.S.C. § 9613(g)(2), specifies that in any action for recovery of costs under CERCLA Section 107, 42 U.S.C. § 9607, "the court shall enter a declaratory judgment on liability for response costs . . . that will be binding on any subsequent action or actions to recovery further response costs . . . ."

74.     The United States will continue to incur response costs associated with the Site, including governmental enforcement costs that are recoverable as response costs under CERCLA.

75.     The United States is entitled to entry of a declaratory judgment that Defendants are jointly and severally liable to the United States for future response costs incurred by United States in connection with the Site, to the extent that such costs are incurred in a manner not inconsistent with the National Contingency Plan.

## THIRD CLAIM FOR RELIEF
### (Injunctive Relief Under CERCLA Section 106, 42 U.S.C. § 9606)

76.     Paragraphs 1-71 are realleged and incorporated herein by reference.

77.     U.S. EPA has determined that there is or may be an imminent and substantial endangerment to the public health or welfare or the environment because of actual and threatened releases of hazardous substances into the environment at and from the Site.

27

78. Pursuant to CERCLA Section 106(a), 42 U.S.C. § 9606(a), Defendants are subject to injunctive relief to abate the danger or threat presented by releases or threatened releases of hazardous substances into the environment at and from the Site.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, the United States of America, prays that this Court:

1. Enter judgment in favor of the United States and against the Defendants for all costs, including prejudgment interest, incurred by the United States for response actions in connection with the Site and not otherwise reimbursed;

2. Enter a declaratory judgment that the Defendants are liable for all future response costs incurred by the United States in connection with the Site;

3. Award the United States its costs of this action; and

4. Grant such other and further relief as this Court deems to be just and proper.

Respectfully submitted,

/s/ W. Benjamin Fisherow
W. BENJAMIN FISHEROW
Deputy Section Chief
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice

28

/s/ Steven J. Willey
STEVEN J. WILLEY
Senior Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Ben Franklin Station
Washington, D.C. 20044
(202) 514-2807
steven.willey@usdoj.gov



/s/ James L. Santelle
JAMES L. SANTELLE
United States Attorney
Eastern District of Wisconsin


/s/ Susan M. Knepel
SUSAN M. KNEPEL
Assistant United States Attorney
State Bar # 1016482
530 Federal Courthouse
517 E. Wisconsin Avenue
Milwaukee, WI 53202
Tele. No. 414/297-1723
Fax No. 414/297-4394
susan.knepel@usdoj.gov

OF COUNSEL:

THOMAS J. KRUEGER
Associate Regional Counsel
U.S. Environmental Protection
 Agency - Region 5
77 W. Jackson Blvd.
Chicago, Illinois 60604
(312) 886-0562